**SIGNED THIS: June 28, 2005**

_____
**THOMAS L. PERKINS**
**UNITED STATES BANKRUPTCY JUDGE**
_____

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| EDWARD R. THUM, | ) | No.  04-85130 |
| Debtor. | ) | |

### O P I N I O N

The Illinois Legislature has not chosen to include a general exemption for wages in the Illinois Personal Property Exemption law.  It has, however, in two separate statutes, set a ceiling on the amount of a debtor's wages that may be garnished under a wage deduction order and a wage assignment.  The question raised in this case is whether those two statutes should be construed as creating an exemption in the nongarnishable wages that should be allowed to a debtor in bankruptcy pursuant to 11 U.S.C. § 522(b)(2).

Edward R. Thum (DEBTOR) is employed by Caterpillar, Inc., as a maintenance mechanic and is a member of the United Auto Workers union (UAW).  As such, the DEBTOR participates in an Incentive Compensation Plan negotiated by the UAW under which the employees receive an annual performance bonus.  The DEBTOR claims that

eighty-five (85%) of the amount of his 2004 bonus, proportional to his prepetition employment, received in 2005, is exempt and does not have to be turned over to the Chapter 7 Trustee.

The DEBTOR filed his Chapter 7 petition on November 16, 2004, without scheduling the anticipated bonus on his schedule of personal property (Schedule B) or schedule of property claimed as exempt (Schedule C). Shortly after the first meeting of creditors was held, the Chapter 7 Trustee, Gary T. Rafool (TRUSTEE), filed a Motion to Compel the DEBTOR to turn over a ratable portion of the bonus attributable to his prepetition 2004 employment. Subsequently, the DEBTOR amended Schedules B and C, disclosing a 2004 incentive bonus in the gross amount of $3,375.66 and an after-tax net amount of $2,133.42, claiming the bonus exempt under 735 ILCS 5/12-803 or 740 ILCS 170/4. The TRUSTEE filed an objection to the claim of exemption. The matter has been briefed by both parties.

In light of the fact that the bonus is an annual one in compensation for work performed during calendar year 2004, the TRUSTEE seeks turnover of the prorated portion of the net bonus amount commensurate with the proportion of 2004 that had elapsed at the time of the filing. The TRUSTEE concedes that the postpetition proportion of the bonus is not property of the bankruptcy estate. The DEBTOR concedes that the prepetition proportion of the bonus is property of the bankruptcy estate. Since 320 of the 366 days in 2004 had elapsed as of the filing, eighty-seven percent (87%) of the net bonus amount is property of the estate, or $1,856.08 ($2,133.42 x .87).

Although exempt property starts out as property of the bankruptcy estate, when an exemption is claimed and allowed, the exempt property passes out of the estate and back

to the debtor by operation of law.  *Matter of Yonikus,* 996 F.2d 866, 869-70 (7th Cir. 1993).

A debtor's right to receive wages earned but not yet paid as of the commencement of the

case is property of the bankruptcy estate.  *In re Irish,* 311 B.R. 63, 66 (8th Cir.BAP 2004).

Since Illinois has opted out of the federal bankruptcy exemption scheme, 735 ILCS 5/12-

1201, the exemptions that may be claimed by the DEBTOR are those available under (1)

Illinois law and (2) federal law other than the list of exemptions set forth in Section 522(d)

of the Bankruptcy Code.  *See,* 11 U.S.C. § 522(b)(2)(A).  The DEBTOR makes no claim of

exemption under any federal statute.

In his brief, the DEBTOR relies primarily on the Illinois statute that sets a ceiling on

the amount of a judgment debtor's wages that may be garnished under a wage deduction

order, as follows:

> Maximum wages subject to collection.  The maximum wages, salary, commissions and bonuses subject to collection under a deduction order, for any work week shall not exceed the lesser of (1) 15% of such gross amount paid for that week or (2) the amount by which disposable earnings for a week exceed 45 times the Federal Minimum Hourly Wage prescribed by Section 206(a)(1) of Title 29 of the United States Code, as amended, in effect at the time the amounts are payable.  This provision (and no other) applies irrespective of the place where the compensation was earned or payable and the State where the employee resides.  No amounts required by law to be withheld may be taken from the amount collected by the creditor.  The term "disposable earnings" means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld.

735 ILCS 5/12-803.

Alternatively, the DEBTOR relies upon an identical statutory ceiling in the Illinois

Wage Assignment Act, as follows:

> The maximum wages, salary, commissions, and bonuses that may be collected by an assignee for any work week shall not exceed the lesser of (1)

15% of such gross amount paid for that week or (2) the amount by which disposable earnings for a week exceed 45 times the Federal Minimum Hourly Wage prescribed by Section 206(a)(1) of Title 29, U.S.C., as amended, in effect at the time the amounts are payable.  This provision (and no other) applies irrespective of the place where the compensation was earned or payable and the State where the employee resides.  No amounts required by law to be withheld may be taken from the amount collected by the creditor. The term "disposable earnings" means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld.  If there is more than one assignment demand received by the employer, the assignees shall collect in the order or priority of service of the demand upon the employer, but the total of all collections shall not exceed the amount that could have been collected if there had been one assignment demand.

Benefits and refunds payable by pension or retirement funds or systems, any assets of employees held by those funds or systems, and any moneys an employee is required to contribute to those funds or systems are exempt and are not subject to a wage assignment under this Act.

A fee of $12 for each wage assignment shall be collected by and paid to the employer and the amount so paid shall be credited against the amount of the wage-earner's outstanding debt.

740 ILCS 170/4.

Based on his wage rate, the DEBTOR is subject to the first alternative calculation in each statute, that the maximum that may be garnished is fifteen percent (15%) of his gross pay.  The DEBTOR contends that since bonuses are expressly included within the pay that is subject to the fifteen percent (15%) garnishment ceiling, the DEBTOR'S bonus is exempt to the extent of eighty-five percent (85%).  The DEBTOR assumes without elaboration that the wage garnishment ceiling has the effect of a general exemption law, an assumption that the TRUSTEE disputes.  Effectively, it is the DEBTOR'S position that these statutes provide a general exemption for accrued wages, applicable in bankruptcy, that is unlimited in amount and that applies regardless of whether the amount due is for regular, periodic pay

or is compensation over and above one's regular paycheck, such as the annual bonus at issue here.

Some states have laws that specifically exempt a judgment debtor's earnings from execution, such as where the debtor satisfies a court that the "earnings are necessary for the use of a family supported wholly or partly by his labor." N.C.G.S.A. § 1-362. Illinois has no such statutory provision. The general personal property exemption law in Illinois, codified at 735 ILCS 5/12-1001 through 1006, contains no express exemption for wages, paid or unpaid. It has long been recognized by courts, however, that the "wild card" provision allowing a debtor to exempt up to $2,000 in "any other property," 735 ILCS 5/12-1001(b), may be used to protect wages earned, but not yet paid, as of the petition date. *In re Keinath,* 102 B.R. 699 (Bankr.C.D.Ill. 1986); *In re Rosol,* 114 B.R. 560 (Bankr.N.D.Ill. 1989). Of course, the wild card exemption may also be used to exempt cash or bank deposits that are the proceeds of wages. Here the DEBTOR has used up his wild card exemption on other property. Notwithstanding the absence of a wage exemption provision in the general personal property exemption statute, Section 12-1001 is not exclusive and courts have recognized specific exemptions under different legislative enactments. *In re Simpson,* 115 B.R. 142 (Bankr.C.D.Ill. 1988). Thus, the fact that the statutory provisions upon which the DEBTOR relies are not part of Illinois' personal property exemption law does not disqualify them as a potential source of an exemption.

Whether a garnishment cap provision has the force and effect of a general exemption for nongarnishable wages is an issue that has been addressed by a number of courts applying the laws of other states. Some courts have held that similar wage

garnishment caps are not general wage exemption provisions available to a debtor in bankruptcy.  *In re Riendeau,* 293 B.R. 832 (D.Vt. 2002), *aff'd,* 336 F.3d 78 (2nd Cir. 2003); *In re Lawrence,* 219 B.R. 786 (E.D. Tenn. 1998); *In re Damast,* 136 B.R. 11 (Bankr.D.N.H. 1991). The district court in *Riendeau,* for example, noted that while general exemptions apply in the context of attachment or execution, the exclusive purpose of the statutory scheme governing wage garnishments is to "limit the periodic garnishment of future wages after final judgment in a civil action." 293 B.R. at 837.  The district court in *Lawrence* reasoned as follows:

> The bankruptcy court below correctly reasons that if Tenn.Code Ann. § 26-2-106 does not provide for the complete sequestration of the debtor's earnings from creditors and instead merely limits the amount of earnings a creditor can obtain through the garnishment of a third-party garnishee, Congress does not intend in the Bankruptcy Code for § 26-2-106 to be recognized and applied as an exemption for disposable earnings in bankruptcy proceedings. This Court agrees with the bankruptcy court's analysis. When Congress enacted 11 U.S.C. § 522(b), it intended to provide for exemptions of property from bankruptcy where the state statute fully, permanently and unequivocally exempts the debtor's property from the reach of his creditors. If creditors are permitted under Tenn.Code Ann. § 26-2-106 to attach and execute on earnings in the debtor's possession where the earnings are no longer possessed by a third-party garnishee, then such earnings cannot be "exempt" property in bankruptcy pursuant to 11 U.S.C. § 522(b).

> This Court also agrees with the bankruptcy court's conclusion that when earnings are paid and distributed to a debtor in Tennessee, the earnings do not retain their exempt status in the debtor's hands and bank accounts under Tenn.Code Ann. § 26-2-106. Once earnings come into the debtor's possession, creditors have the right under Tennessee law to attach and execute on the earnings to collect debts except to the extent that another statutory exemption may apply.

219 B.R. at 793.

Other courts have held to the contrary. *In re Jones,* 318 B.R. 841 (Bankr.S.D.Ohio 2005) (Ohio statute that incorporated the Federal Consumer Credit Protection Act 25% garnishment ceiling on wages as "property exempt from execution, garnishment, attachment, or sale to satisfy a judgment" created a general exemption in accrued wages); *In re Urban,* 262 B.R. 865 (Bankr.D.Kan. 2001) (where Kansas had a long history of making wages exempt from any process or execution, a Kansas statute modeled after the Federal Consumer Credit Protection Act was construed as providing a general exemption available in bankruptcy for the 75% of wages that were nongarnishable). As with all issues of statutory interpretation, the primary determinant is the language of the statute.

At the outset, it is important to clarify what is meant by "exempt" property. As denoted by the Supreme Court many years ago, the essence of an exemption is a "present right . . . which withdraws the property from levy and sale under judicial process." *White v. Stump,* 266 U.S. 310, 313, 45 S.Ct. 103, 104, 69 L.Ed. 301 (1924). Under Section 522(b) of the Bankruptcy Code, that term is intended to identify property that the state has defined as completely beyond the reach of creditors. *Lawrence,* 219 B.R. at 792. Likewise, in Illinois, exempt property is that which the Legislature has identified and declared to be free from liability for the satisfaction of debts. *In re Marriage of Logston,* 103 Ill.2d 266, 277, 469 N.E.2d 167, 171, 82 Ill.Dec. 633, 637 (1984).

In considering whether the statutory provisions in question render the nongarnishable portion of accrued wages "completely beyond the reach of creditors" and "free from liability for the satisfaction of debts," it is helpful to compare the language used by the Legislature when creating other exemptions. The Illinois personal property

7

exemption statute expressly provides that the covered property "is exempt from judgment, attachment, or distress from rent."[1]  735 ILCS 5/12-1001.  Similarly, the provision exempting certain retirement plans states that such plans are "exempt from judgment, attachment, execution, distress for rent, and seizure for satisfaction of debts."  735 ILCS 5/12-1006.  Likewise, the statute providing an exemption for workers' compensation awards quite forcefully states that no such award "shall be assignable or subject to any lien, attachment or garnishment, or be held liable in any way for any lien, debt, penalty or damages."  820 ILCS 305/21.  Equally broad is the provision making certain life insurance proceeds "exempt from execution, attachment, garnishment or other process, for the debts or liabilities of the insured."  215 ILCS 5/238(a).  As well, the Illinois Homestead Exemption law makes a person's right in and title to a homestead "exempt from attachment, judgment, levy, or judgment sale for the payment of his or her debts or other purposes."  735 ILCS 5/12-901.  Thus, the Legislature has a demonstrable pattern, when creating an exemption, of using language that unequivocally protects the identified property against any and all debt collection mechanisms.

The statutory provisions in question do not contain similar language that puts accrued wages beyond the reach of creditors.  Rather, those provisions, much narrower in scope, merely mandate the maximum amount that an employer may withhold pursuant to a wage deduction order or wage assignment.  It is only by *implication* that the DEBTOR construes that withholding ceiling as a general exemption for the portion of accrued wages

---

[1]In Illinois, "attachment" is a prejudgment remedy whereby a creditor may sequester a debtor's property upon a showing that the debtor, *inter alia,* has concealed himself, has left the state, or is about to transfer his property.  735 ILCS 5/4-101 *et seq.*

that are nongarnishable.  The import of the foregoing comparisons is that the Illinois

Legislature knows how to make property exempt from the reach of creditors when it wants

to.  Because the provisions at issue do not contain similar language making wages

generally exempt from the payment of debts, it is difficult to buy the DEBTOR'S argument,

particularly when taking into consideration that a wage deduction proceeding is not the

exclusive method by which an employee's earnings may be diverted to a judgment

creditor.  For example, a simple court order, entered at a citation proceeding, would suffice.

As other courts have recognized, limiting the effect of a wage garnishment cap to

a nonbankruptcy garnishment proceeding is consistent with the purpose of such caps, as

well as with bankruptcy policies.    Addressing a debtor's argument that a wage

garnishment cap contained in the Federal Consumer Credit Protection Act provides an

exemption in wages that could be claimed in bankruptcy, the Supreme Court contrasted

the policy underlying the garnishment cap with the purpose of bankruptcy relief, as

follows:

> An examination of the legislative history of the Consumer Protection
> Act makes it clear that, while it was enacted against the background of the
> Bankruptcy Act, it was not intended to alter the clear purpose of the latter
> Act to assemble, once a bankruptcy petition is filed, all of the debtor's assets
> for the benefit of his creditors.  *See, e.g., Segal v. Rochelle,* 382 U.S. 375, 86 S.Ct.
> 511, 15 L.Ed.2d 428 (1966).    Indeed, Congress' concern was not the
> administration of a bankrupt's estate but the prevention of bankruptcy in the
> first place by eliminating 'an essential element in the predatory extension of
> credit resulting in a disruption of employment, production, as well as
> consumption' and a consequent increase in personal bankruptcies. Noting
> that the evidence before the Committee 'clearly established a causal
> connection between harsh garnishment laws and high levels of personal
> bankruptcies,' the House Report concluded:
>
> 'The limitations on the garnishment of wages adopted by your
> committee, while permitting the continued orderly payment of consumer

debts, will relieve countless honest debtors driven by economic desperation
from plunging into bankruptcy in order to preserve their employment and
insure a continued means of support for themselves and their families.'
H.R.Rep.No.1040, 90th Cong., 1st Sess., 21 (1967).

> *See also id.*, at 7. In short, the Consumer Credit Protection Act sought
> to prevent consumers from entering bankruptcy in the first place. However,
> if, despite its protection, bankruptcy did occur, the debtor's protection and
> remedy remained under the Bankruptcy Act.

*Kokoszka v. Belford,* 417 U.S. 642, 650-51, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974). When

debtors are in Chapter 7 bankruptcy, pending wage garnishments are automatically stayed

and postpetition wages are not property of the estate, so the concern over a wage earner's

ability to support himself and his family in the face of a garnishment proceeding is simply

not present. It is the bankruptcy proceeding itself, not the garnishment cap, that provides

that protection.

Moreover, if the Illinois Legislature had intended to create a general exemption for

accrued wages in 735 ILCS 5/12-803, it would not have been necessary to repeat the same

exemption in 740 ILCS 170/4. The fact that the identical wage withholding ceiling appears

in each statute indicates that the Legislature did not view either one as having a general

application. Rather, the better interpretation is that the wage withholding ceilings are

limited in their application to wage deduction orders and wage assignments and no

general exemption for the nongarnishable portion of accrued wages was intended.

In addition, construing the statutes as creating a general exemption for accrued and

unpaid wages would lead to the anomalous result that wages, exempt while unpaid, would

lose their exempt status upon receipt by the employee. The Illinois Legislature has drawn

clear distinctions between an exemption for an accrued right to receive payments and the

proceeds thereof. *See,* 735 ILCS 5/12-1001(h) (exempting the debtor's right to receive certain payments as well as "property that is traceable" thereto). There is no reasonable basis to suggest that either 735 ILCS 5/12-803 or 740 ILCS 170/4 provides an exemption for wages that have been paid to an employee which are held in the form of cash or a bank deposit.

In light of the purpose for wage garnishment caps, it is perfectly understandable that Illinois would protect a portion of unpaid wages from garnishing creditors, while affording no special protection to wages once paid. The purpose of garnishment caps is to protect a wage earner living paycheck to paycheck from losing his entire earnings so that he is left destitute with no ability to pay necessary family living expenses. Presumably, by receiving 85% of his pay, he is at least able to pay the rent and put food on the table.[2] Once he deposits the wages into a bank account, however, the funds become fair game for creditors. An insolvent person may not accumulate and shelter funds in a bank account simply because they derive from wages. It is entirely rational that the Legislature would enact wage garnishment caps as a limited, non-bankruptcy protection for accrued wages while leaving the wild card exemption as the sole source of protection for paid wages.

Based upon the cases cited by the parties and this Court's own research, it appears that no Illinois court has adopted or expressed agreement with the DEBTOR'S position that either 735 ILCS 5/12-803 or 740 ILCS 170/4 is a general exemption statute that renders the nongarnishable portion of wages exempt from liability for the debts of the wage earner.

---

[2]The case at bar concerns an annual bonus paid out in the form of a special check, in addition to the regular periodic pay received by the DEBTOR. Thus, the policy behind wage garnishment caps is inapplicable to the facts of this case. It is difficult to imagine any rational policy that would support a blanket exemption for the kind of bonus payment at issue, without regard to its amount or whether it was needed for the support of the wage earner or his family.

Only one federal court, a bankruptcy court, has, in dictum, accepted that position, in *In re Johnson,* 53 B.R. 919 (Bankr.N.D.Ill. 1985), *upon reconsideration*, 57 B.R. 635.[3]

Subsequent to *Johnson,* the Seventh Circuit rejected the general exemption theory in *Wienco, Inc. v. Scene Three, Inc.,* 29 F.3d 329 (7th Cir. 1994). There, a judgment debtor appealed from a district court order compelling him to turn over certain commissions and to pay twenty-five percent (25%) of his future income to his judgment creditor. Relying on 735 ILCS 5/12-803, the debtor argued that eighty-five percent (85%) of his earned income was exempt from the enforcement of a judgment. Calling the argument "absurd" and "spurious," the Seventh Circuit concluded that the wage deduction statute was "clearly inapplicable," since the district court's order was not a wage deduction order as it was directed to the debtor, not his employer. The Court also relied upon the absence of any statutory language making the funds or wages exempt from the enforcement of judgments. It is a logical extrapolation of the relatively terse *Wienco* opinion to conclude that the Seventh Circuit interpreted the statutory limit on wage deductions, not as a general exemption law protecting eighty-five percent (85%) of wages from the enforcement of judgments, but as a remedy-specific limitation, applicable only to wage deduction orders. The Seventh Circuit's opinion in *Wienco* is binding authority on this Court and compels the outcome that 735 ILCS 5/12-803 does not create a general exemption for accrued wages. The language of 740 ILCS 170/4, setting the maximum amount of earnings

---

[3]The DEBTOR relies upon *In re Christy,* 306 B.R. 611 (Bankr.C.D.Ill. 2004), where the court denied cross motions for summary judgment after finding a genuine issue of material fact. Although the debtor in that case relied upon 735 ILCS 5/12-803 in claiming an exemption in accounts receivable valued at $155,000, it appears that the Chapter 7 trustee did not challenge whether that provision created an exemption available to a debtor in bankruptcy. Ultimately, the matter was resolved by agreement of the parties without the court having to decide it.

subject to collection under a wage assignment and animated by similar policy concerns, is identical to Section 12-803 in that it contains no reference to the nongarnishable portion being "exempt" or otherwise not liable on enforcement of a judgment. Accordingly, for that reason and the other reasons set forth herein, that statute should be accorded a similar interpretation.

For these reasons, the Court determines that 735 ILCS 5/12-803 and 740 ILCS 170/4 do not give rise to a general exemption for wages earned but not yet paid to an employee and have no relevance to the exemptions that a debtor may claim in a bankruptcy case. The Court holds that those statutes provide no basis for the claim of exemption asserted by the DEBTOR in his 2004 annual incentive bonus and the claim of exemption will be denied. Since the DEBTOR has exhausted his $2,000 wild card exemption on other property, there is no basis for exempting the bonus. The TRUSTEE'S motion for turnover will be granted and the DEBTOR will be ordered to pay to the TRUSTEE the sum of $1,856.08.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

Copies to:
Charles E. Covey, 416 Main Street, Suite #700, Peoria, IL 61602
Gary T. Rafool, 411 Hamilton Blvd., Suite #1600, Peoria, IL 61602
U.S. Trustee, 401 Main Street, Suite 1100, Peoria, IL 61602

###